# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 11-00156-DD |
| Terry Michael Taylor, | Chapter 7 |
| Debtor. | **ORDER** |

This matter is before the Court on a Motion to Sell Free & Clear ("Motion") filed by Michelle L. Vieira, the chapter 7 trustee ("Trustee") on May 24, 2011.  An Objection to Trustee's Motion was filed by First Citizens Bank ("Creditor") on June 14, 2011.  Trustee filed a Response on July 12, 2011, and Creditor filed a Reply on July 18, 2011.  A hearing was held on July 19, 2011.  Following the hearing, the Court took the matter under advisement and requested briefs from the parties to be submitted within seven (7) days.  Both parties submitted briefs to the Court.  After review of the parties' briefs and further consideration of the issues, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Terry Michael Taylor ("Debtor") filed for chapter 7 relief on January 11, 2011 and received a discharge on June 30, 2011.  Debtor owned and operated a hardware store in Kingstree, South Carolina.  The hardware store was located in a 4,500 square foot building on two lots of land near downtown Kingstree.

On August 25, 2006, title to the property at issue was conveyed to Debtor.  On the same day, T&T Hardware, Inc ("T&T"), a corporation owned by Debtor, through which he conducted his hardware business, gave a note and mortgage to Williamsburg First National Bank ("Williamsburg").  The mortgage was recorded on August 30, 2006.  Debtor personally guaranteed the note as well.  In June 2010, due to a default on the mortgage, a foreclosure action

was commenced by Williamsburg, and a lis pendens and summons and complaint were filed, along with a request to reform the mortgage and change the name of the mortgagor from T&T to Debtor. Soon after, Williamsburg closed, the FDIC was appointed receiver for Williamsburg, and Creditor acquired most of the assets and liabilities of Williamsburg, apparently including the note, mortgage, and guaranty currently at issue.[1] However, an assignment of the note, mortgage, and guaranty from the FDIC to Creditor did not occur until July 15, 2011.

An appraisal obtained by Trustee indicated that the property is worth $85,000, while an appraisal obtained by Creditor in March 2011 found the property to be worth $140,000. At the hearing, Creditor's expert, Roger K. Kirby, testified that he believed the property was worth $135,000, and his appraisal, submitted by Creditor as an exhibit, states the same value. Testimony at the hearing established that the property is in very poor condition. Photographs introduced by Trustee showed numerous problems with the building, including: a crack in the floor which runs the length of the building, significant water damage, roof damage, a destroyed awning, and a crack in the exterior wall of the building. Jackson L. Cobb, Trustee's expert, testified that while he could not determine the exact cause, the building had structural problems. Creditor's appraiser did not discount his appraisal for some of these issues, including the crack in the building's floor. However, Mr. Kirby testified that he believed the crack in the floor had been present for a long period of time, and that the condition of the property was sufficient to operate a hardware store or a similar type of business.

The parties presented extensive testimony regarding the market for commercial properties and comparable sales in Kingstree. Mr. Cobb provided evidence on three comparable properties, one of which is almost three times larger than the property at issue and sold at auction for

---

[1] The Purchase and Assumption agreement entered into in July 2010 when Creditor acquired the assets and liabilities of Williamsburg makes no specific reference to particular asset and liabilities.

$22,000, another which is slightly larger and has been on the market at $159,000 for 9 months with no offers, and a final property which sold for $75,000 and included two buildings, totaling 2,000 square feet, in substantially better condition than the property at issue. Creditor's expert, Mr. Kirby, testified regarding four different comparable properties in Lake City, South Carolina, a nearby community. He stated that the property most similar to the property at issue is a 3,592 square foot building formerly used as a service repair garage, which sold for $190,000 in January 2008. The other comparables Mr. Kirby testified to and included in his appraisal report ranged in sales price from $149,500 to $380,000, but were all sold in 2006 and early 2007.

Trustee has obtained a purchaser for the property, who is willing to pay $125,000. $15,000 of the proceeds from the sale will be paid to Creditor, in full satisfaction of Creditor's interest in the inventory. Trustee proposes to retain the remaining proceeds, after real estate commissions, of $102,500 until the dispute regarding Creditor's lien is resolved. Mr. Cobb testified that the market for commercial properties in Kingstree is extremely poor and that if the property is not sold to the present buyer, it will take at least 12 months to find another buyer. Mr. Cobb testified that he believed this was the highest and best offer that Trustee would be able to obtain. Mr. Kirby conceded that there was no substantial market for the property.

## CONCLUSIONS OF LAW

Much of the parties' argument in their pleadings and at the hearing goes to the ultimate issue of whether or not Creditor's lien should apply to the property under a theory of either reformation or equitable lien. However, this issue is not presently before the Court. The only issues the Court must presently decide are whether Creditor has standing to object to the proposed sale and whether Trustee has the authority to sell the property. In deciding these issues, the Court does not express any views regarding the validity, priority, or extent of

Creditor's lien, nor does it express any view regarding whether Creditor is entitled to any or all proceeds resulting from Trustee's sale of the property. This Order merely addresses the narrow issues of Creditor's standing and Trustee's ability to sell the property free and clear of whatever liens may exist.

    **I.    Standing**

Trustee argues that Creditor does not have standing to object to her Motion because the assignment of Williamsburg's interest in the note, mortgage, and guaranty from the FDIC to Creditor did not occur until July 15, 2011, one day after Creditor's Objection was filed. Creditor responds that it acquired the note, mortgage, and guaranty on July 23, 2010, when the Purchase and Assumption agreement was executed. Creditor argues that the Assignment executed on July 15 is dispositive on the issue of standing, as it states, "The assets purchased by First Citizens Bank and Trust Company, Inc., include the instrument (sic) identified in this Assignment . . ." Therefore, Creditor argues, it is clear that it acquired the note, mortgage, and guaranty on July 23, 2010, well before Debtor's chapter 7 bankruptcy was even filed.

11 U.S.C. § 1109(b) states, "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." Section 1109(b) should be broadly construed, in order to "allow all parties affected to appear and be heard." *In re Keim*, 212 B.R. 493, 497(Bankr. D. Md. 1997) (citing *Unsecured Creditors' Comm. v. Marepcon Fin. Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430 (4th Cir. 1990); *In re River Bend-Oxford Assocs.*, 114 B.R. 111 (Bankr. D. Md.1990)). Thus, if considered a party in interest under section 1109(b), Creditor has standing to object to Trustee's Motion.

The Court finds that Creditor is a party in interest under section 1109(b) and therefore has standing for the limited purpose of objecting to Trustee's Motion. Creditor is a successor in interest to Williamsburg, who recorded its mortgage on the property and filed a lis pendens with respect to the property in June 2010. Trustee relies on the fact that the assignment of the note, mortgage, and guaranty from the FDIC to Creditor did not occur until July 15, 2011, after the filing of Creditor's Objection. However, Creditor claims the actual transfer of those documents to Creditor occurred much earlier than that. When Williamsburg was closed in July 2010, Creditor purchased most of the assets and most of the liabilities of Williamsburg. Trustee points out that "most of the assets and most of the liabilities" does not specify what assets were purchased, and therefore there is no way of knowing whether the note, mortgage, and guaranty were transferred at that time. However, for purposes of the issues presently before it, the Court finds that Creditor had a sufficient interest in the documents to have standing to object to the sale. The Assignment completed on July 15, 2011 contained a statement indicating that the documents were acquired by Creditor on July 23, 2010. This does not mean that the assignment was effective at that time, but further illustrates the complexity of the dispute regarding the lien at issue.

Trustee did not present evidence that the purchase of the documents did not occur in July 2010, but simply asserts that the purchase agreement is ambiguous because it fails to specify which assets and liabilities were acquired by Creditor. While failing to list the assets and liabilities was probably not the most prudent course of action, the Court recognizes that the vast number of assets and liabilities Williamsburg likely owned at its closing rendered specifically listing each asset and liability in the purchase agreement impractical and perhaps impossible. In the absence of evidence showing that the note, mortgage, and guaranty were not among those

assets purchased by Creditor in July 2010, the Court finds that Creditor has standing to object to Trustee's Motion.

### II. Trustee's Authority to Sell

Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Trustee has indicated that her Motion was filed pursuant to section 363(f)(4).[2] Trustee has not asserted an argument that any other subsection applies to her proposed sale; as a result, the Court will address only section 363(f)(4).

While the Bankruptcy Code does not define "bona fide dispute," courts generally state that the applicable standard under section 363(f)(4) is "whether there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996). In deciding a motion to sell relying on section 363(f)(4), the Court does not have to resolve the underlying dispute or even determine the probable outcome, but only has to find that such a dispute exists. *Id.* (citing *In re Collins*, 180 B.R. 447, 452 (Bankr E.D. Va. 1995)).

Here, a bona fide dispute exists. Creditor's predecessor, Williamsburg, filed a lis pendens and a request to reform the mortgage. However, the mortgage is currently in the name

---

[2] Creditor complains that the Motion did not provide adequate notice as it was not specific regarding the Code section on which Trustee relied. No party was disadvantaged by the omission, as the parties clearly were prepared to argue their positions regarding the extent to which a dispute existed and the validity of Creditor's lien.

of T&T, not Debtor. The validity of Creditor's lien is not clear, and without a trial, it cannot be made clear whether reformation, an equitable lien, or no relief is appropriate. It appears that there is an objective basis for finding there is a legitimate legal dispute with respect to the validity of Creditor's lien. The factual basis for any equitable relief is also not clear and may well turn on facts the litigants have yet to discover.

The purpose of section 363(f)(4) is to allow the trustee to sell property subject to dispute so that the estate's liquidation is not delayed while disputes are litigated. *In re Daufuskie Island Props., LLC*, 431 B.R. 626, 645 (Bankr. D.S.C. 2010) (quoting *In re Bella Vista Assocs., LLC*, No. 07-18134/JHW, 2007 WL 4555891, at *4 (Bankr. D.N.J. Dec. 18, 2007)). Trustee noted at the hearing that the buyer was ready to close and that she risked losing the purchaser if the sale was delayed further. If the sale is not allowed at this point in time, because an adversary proceeding has not yet even been filed, the litigation of the adversary proceeding would cause significant delay. Even if Trustee ultimately prevailed in that adversary proceeding, Trustee would no longer have a buyer and would have to find a new buyer, which testimony established could likely be done only with great difficulty. Allowing the sale based on the parties' bona fide dispute satisfies the purpose of section 363(f)(4).

The Court also finds that the proposed sale is reasonable. Testimony at the hearing regarding valuation of the property established that the property is in poor condition and in need of substantial repairs. Creditor's expert, Mr. Kirby, did not dispute that the property was in poor condition. Additionally, Mr. Cobb testified, and Mr. Kirby agreed, that the market for commercial property in Kingstree is extremely limited and that the property would likely be difficult to sell. The buyer is willing to close immediately, pay above the value of the property set forth in Trustee's appraisal, and pay cash, providing immediate funds to the estate and, as to

the inventory, to Creditor. The sale of the property is within Trustee's reasonable business judgment and should be consummated.

## CONCLUSION

For the reasons set forth above, the Court finds that Creditor's interest is in bona fide dispute. As a result, the conditions of section 363(f)(4) are satisfied. Trustee's Motion is granted. Trustee may complete the sale of the property.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**07/27/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 07/27/2011